UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action No.: 3 04 CV492-H

FILED
CHARLOTTE, N.C.
2004 SEP 22 PM 3: 46
U.S. DISTRICT COURT
W. DIST. OF N.C.

| | |
|---|---|
| CRYSTAL EILEEN ARMSTRONG,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendant. | **NOTICE OF REMOVAL** |

Equifax Information Services LLC ("Equifax"), named as defendant in the above-captioned action, hereby files this Notice of Removal of this action from the General Court of Justice, Superior Court Division, County of Mecklenburg, in which this action is now pending, to this Court. This Notice of Removal is filed pursuant to 28 U.S.C. §§1441 and 1446. In support hereof, Equifax states as follows:

1. An action was commenced against Equifax in the General Court of Justice, Superior Court Division, County of Mecklenburg, entitled <u>Crystal Eileen Armstrong v. Equifax Information Services LLC</u>, Case No. 04-CVS-15464 (the "State Court Action") by filing the Summons and Complaint and serving a copy of each upon Equifax on September 1, 2004. Copies of the Summons and Complaint served with the Complaint are collectively attached to this Notice of Removal as Exhibit "A".

2. To the best of the knowledge of Equifax, no other proceedings, process, pleadings, orders or other papers have been filed or served in the State Court Action.

3. This Court has original jurisdiction over this case pursuant to 28 U.S.C. §1331, in that this is a civil action arising under the constitution, laws or treaties of the United States; specifically under 15 U.S.C. §§1681, et seq., otherwise known as the Fair Credit Reporting Act, as follows:

(a) Plaintiff's complaint alleges that Equifax violated the Fair Credit Reporting Act, 15 U.S.C. §§1681, et seq. (Complaint, ¶¶ 13 through 19).

(b) The Fair Credit Reporting Act, pursuant to 15 U.S.C. §1681p, provides that "any action brought under this chapter may be brought in any appropriate United States District Court without regard to the amount in controversy."

4. This Notice of Removal is filed within thirty days of the receipt of the Summons and Complaint by Equifax.

5. The State Court in which this action was commenced is within this Court's district and division.

6. This Notice of Removal will be filed in the General Court of Justice, Superior Court Division, County of Mecklenburg, and a copy of this Notice of Removal will also be served on Plaintiff.

WHEREFORE, Equifax prays that the above-described action now pending in the General Court of Justice, Superior Court Division, County of Mecklenburg, be removed to this Court.

Respectfully submitted this 22nd day of September, 2004.

               KILPATRICK STOCKTON LLP

               _____
               C. Marshall Lindsay
               North Carolina Bar No. 25686
               Suite 2500
               214 North Tryon Street
               Charlotte, North Carolina 28202-2381
               Phone: (704) 338-5000
               *Attorneys for Defendant*

Of Counsel:

J. Anthony Love
KILPATRICK STOCKTON LLP
1100 Peachtree St., Ste. 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 541-3207

# CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of **NOTICE OF REMOVAL** upon the following parties by depositing same in the United States mail, with sufficient postage thereon to insure delivery, and addressed as follows: insure delivery, and addressed as follows:

>John W. Taylor, Esq.
>Haley M. Jonas, Esq.
>John W. Taylor, P.C.
>P.O. Box 472827
>Charlotte, NC 28247-2827

This 22nd of September 2004.

C. Marshall Lindsay
*Attorney for Defendant*

| STATE OF NORTH CAROLINA | File No. 04-CVS-15410 |
|---|---|
| Mecklenburg County | In The General Court of Justice<br>☐ District ☒ Superior Court Division |

| Name of Plaintiff | |
|---|---|
| Crystal Eileen Armstrong | **CIVIL SUMMONS** |
| Address | |
| | ☐ Alias and Pluries Summons |
| City, State, Zip | |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| Name of Defendant(s) | Date Original Summons Issued |
| Equifax Information Services, LLC | |
| | Date(s) Subsequent Summon(es) Issued |

**To Each of The Defendant(s) Named Below:**

| Name And Address of Defendant 1 | Name And Address of Defendant 2 |
|---|---|
| Equifax Information Services, LLC<br>c/o Corporation Service Company, Registered Agent<br>327 Hillsborough Street<br>Raleigh, NC 27603 | |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address of Plaintiff's Attorney (If None, Address of Plaintiff) | Date Issued | Time | ☒ AM ☐ PM |
|---|---|---|---|
| JOHN W. TAYLOR, P.C.<br>P.O. Box 472827<br>Charlotte, NC 28247 | Signature | | |
| | ☐ Deputy CSC | ☒ Assistant CSC | ☐ Clerk of Superior Court |

| ☐ ENDORSEMENT | Date of Endorsement | Time | ☐ AM ☐ PM |
|---|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Signature | | |
| | ☐ Deputy CSC | ☐ Assistant CSC | ☐ Clerk of Superior Court |

**NOTE TO PARTIES:** Many Counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts        (Over)

Case 3:04-cv-00492-RLV-CH   Document 1   Filed 09/22/04   Page 5 of 13

STATE OF NORTH CAROLINA　　　FILED　　　IN THE GENERAL COURT OF JUSTICE
　　　　　　　　　　　　　　　　　　　　　　　SUPERIOR COURT DIVISION
COUNTY OF MECKLENBURG　04 AUG 27 AM 11:　FILE NO. 04-CVS-_____
　　　　　　　　　　　　　MECKLENBURG CO., C.S.C.

CRYSTAL EILEEN ARMSTRONG,　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　)
vs.　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　)　　　COMPLAINT
EQUIFAX INFORMATION SERVICES, LLC, )　(JURY TRIAL DEMANDED)
　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　 )

The Plaintiff, complaining of the acts of the Defendant, says and alleges:

1. This is an action to recover damages under the Fair Credit Reporting Act and North Carolina law and for declaratory and injunctive relief.

2. The Plaintiff is a citizen and resident of Mecklenburg County, North Carolina.

3. Upon information and belief, the Defendant Equifax Information Services, LLC ("Equifax"), is a limited liability company organized and existing under the laws of the state of Georgia and it is authorized to do business in the State of North Carolina and is engaged in substantial business activity within the state of North Carolina.

4. Upon information and belief, on or around October 5, 1999, a 1996 Chevrolet Blazer ("vehicle") was purchased from Town & Country Ford using the Plaintiff's social security number and other personal information. At the time the vehicle was purchased, the Plaintiff was unaware of the purchase and the Plaintiff had no involvement in or knowledge of the purchase of the vehicle. A copy of the Simple Interest Motor Vehicle Contract and Security Agreement (collectively "Contract") is attached hereto as Exhibit "A."

5. Upon information and belief, on or around October 5, 1999, the Motor Vehicle Contract was assigned to AmeriCredit Financial Services, Inc ("AmeriCredit").

6. AmeriCredit has represented to the Defendant that the Plaintiff was indebted to it under the Contract. This representation was false, deceptive and misleading.

7. The Defendant has included the false, deceptive and misleading information in the credit file of the Plaintiff causing it to appear on consumer reports regarding the Plaintiff provided to third parties.

8. The Plaintiff's credit worthiness has been repeatedly compromised by the acts and omissions of the Defendant.

9. On or about June 10, 2004, the Plaintiff disputed by letter, the inclusion of the false, deceptive, and misleading information in her credit file with the Defendant.

10. With the June 10, 2004 letter, the Plaintiff enclosed a copy of her current driver's license and a copy of the police report she filed on November 26, 2000. The Plaintiff also enclosed documents she obtained from Town & Country Toyota, including a copy of the driver's license of the person who stole the Plaintiff's personal information to obtain the vehicle, a copy of the Town & Country Buyer's Order dated October 5, 1999 and a copy of the Consumer Credit Sale Contract dated October 5, 1999.

11. In response to the letter and the enclosures provided to the Defendant by the Plaintiff, the Defendant verified to the Plaintiff that the AmeriCredit account belonged to her and refused to remove the false, deceptive and misleading information from the Plaintiff's credit file.

12. As a result, the Defendant failed in its duties to reinvestigate the information disputed by the Plaintiff.

13. As a result of the derogatory information reported by the Defendant, Plaintiff has had adverse action taken on existing credit accounts, has been denied credit and has abstained from applying for credit.

## FIRST CAUSE OF ACTION
(Declaratory Judgment)

14. All preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

15. Pursuant to Article 26, Chapter 1 of the North Carolina General Statutes, the Plaintiff is entitled to a declaration that she is not indebted to AmeriCredit and that the false, deceptive and misleading information should not be included in the Plaintiff's credit file.

## SECOND CAUSE OF ACTION
(Violation of the Fair Credit Reporting Act)

16. All preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

17. The Plaintiff is a consumer as contemplated by the FCRA section 1681a(c).

18. The Defendant is a consumer reporting agency as defined in section 1681(f) of the FCRA regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties.

19. The Defendant willfully and/or negligently violated the provision of the FCRA as follows:

a. By failing to follow reasonable procedures to assure maximum possible accuracy of the information in reports during the preparation of the consumer reports concerning the Plaintiff;

b. By failing to delete incomplete and inaccurate information in Plaintiff's file after conducting a reinvestigation, in violation of section 1681i(a);

c. By failing to comply with FCRA section 1681i.

20. As a result of the Defendant's violations of the FCRA, the Plaintiff suffered actual damages, including injury to her credit reputation and has suffered undue worry, anxiety and loss of happiness.

### THIRD CAUSE OF ACTION
### (Defamation)

21. All preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

22. The Defendant has falsely represented that the Plaintiff is indebted to AmeriCredit.

23. The false representations caused actual damages to the Plaintiff, including injury to credit reputation, undue worry, anxiety and loss of happiness.

24. The false representations were made willfully, maliciously and made with an intent to injure the Plaintiff or were made with a reckless and wanton disregard for the truth.

25. The Plaintiff is entitled to recover actual and punitive damages from the Defendant as a result of the false representations.

### FOURTH CAUSE OF ACTION
### (Unfair and Deceptive Trade Practices)

26. All preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

27. The actions of the Defendant constitute unfair and deceptive practices in violation of N.C.G.S. § 75-1.1.

28. The Plaintiff has suffered actual damages as a proximate cause of the Defendant's actions.

29. The Plaintiff is entitled to recover from the Defendant treble damages in excess of $10,000 and attorney fees pursuant to N.C.G.S. §§ 75-16 and 75-16.1.

## FIFTH CAUSE OF ACTION
### (Injunctive Relief)

30. All preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

31. The Plaintiff is entitled to an order requiring the Defendant to remove any and all information regarding the AmeriCredit account from her credit file and to an order enjoining the Defendant from ever including the AmeriCredit account in her credit file in the future and from ever representing to any third party that the Plaintiff is indebted to AmeriCredit on that account.

WHEREFORE, the Plaintiff respectfully prays the Court:

1. That the Court declare she is not indebted to AmeriCredit and that the false, deceptive and misleading information should not be included in the Plaintiff's credit file.

2. That the Court enter an order requiring the Defendant to remove any and all information regarding the AmeriCredit account from her credit file and to an order enjoining the Defendant from ever including the AmeriCredit account in her credit file in the future and from ever representing to any third party that the Plaintiff is indebted to AmeriCredit on that account.

3. That she have and recover from the Defendant actual and treble or punitive damages in an amount in excess of $10,000.00 to be determined by trial.

4. That she have and recover from the Defendant the costs of this action, together with a reasonable attorney's fee pursuant to the Fair Credit Reporting Act and N.C. G. S. Section 75-16.1.

5. That she have a trial by jury.

6. That she have and recover from the Defendant such other and further relief as may be just and proper.

DATED this 25th day of August 2004.

JOHN W. TAYLOR, P.C.

*/s/ Haley Mathews Jonas*
John W. Taylor, Bar No. 21378
Haley M. Jonas, Bar No. 30631
Attorneys for Plaintiff
P.O. Box 472827
Charlotte, NC 28247-2827
704-540-3622

THIS I CONSUMER CREDIT SALE DOCUMENT

## SIMPLE INTEREST MOTOR VEHICLE CONTRACT AND SECURITY AGREEMENT

| BUYER'S NAME | | | | DATE OF CONTRACT | Stock No. LP3902A |
|---|---|---|---|---|---|
| CHRISTI SHAUNTI ARMSTRONG | | | | 10/05/1999 | Source _____ |
| BUYER'S RESIDENCE OR PLACE OF BUSINESS | | ZIP CODE | AGREEMENT No. | Salesperson LERANCE WILKERSON |
| 3144-D CENTRAL AVE CHARLOTTE NC 28205 | | | | | Date 10/05/1999 |
| CO-BUYER'S NAME AND ADDRESS | | | | | Bus. Phone (704)569-7598 |
| | | | | | Res. Phone (704)563-2110 |

In this contract the words "we," "us" and "our" refer to the creditor (seller) named below or, upon any assignment, its assignee. The words "you" and "your" refer to the buyer and to buyer if any named herein and to the heirs, executors, administrators and assigns of such buyer and co-buyer. We sell you the motor vehicle described below (the "vehicle") on credit. The credit price is shown below as the "Total Sale Price." The "Cash Price" is also shown below. By signing this contract you choose to buy the vehicle on credit and agree to pay the Amount Financed, along with a Finance Charge at the Annual Percentage Rate shown below on the unpaid principal balance of the Amount Financed until paid, according to the schedules, terms and agreements shown on the front and back of this contract. If this contract is signed by a buyer and co-buyer, each is individually and together responsible for all agreements in the contract.

SEE OTHER SIDE FOR ADDITIONAL TERMS AND AGREEMENTS:

| NEW/USED | YEAR | MAKE | CYL | DIESEL | CAM | OTHER BODY STYLE | MODEL | ODOMETER READING | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|---|---|---|---|---|---|
| | 1996 | CHEVROLET | 6 | | XX | SU | BLAZER | 34182 | 1GNDT13W2T2305630 |
| USED | COLOR BLACK | TRIM | TIRES | TRANS | KEY NO. | | LIC. NO. | R.O.S. NO. | |

### DISCLOSURES PURSUANT TO THE TRUTH-IN-LENDING ACT

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 3000.00 |
|---|---|---|---|---|
| 19.95 % | $ 10090.44 (e) | $ 17162.16 | $ 27252.60 | $ 30252.60 (e) |

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of | N/A | |
| One Payment of | N/A | |
| 59 Payments of | 454.21 | Monthly, beginning 11/04/1999 |
| One Final Payment of | 454.21 | 10/04/2004 |

(e) means an estimate

**SECURITY:** You are giving a security interest in the goods or property being purchased.

**LATE CHARGES:** If any payment is more than 10 days late you will be charged the lessor of $6 or 5% of the installment past due.

**PREPAYMENT:** If you pay off early, you may have to pay a penalty.

See the remainder of this document for any additional information about nonpayment, default and any required prepayment in full before the scheduled date.

---

If you are buying a used vehicle with this contract, as indicated in the description of the vehicle above, federal regulations may require a special buyer's guide to be displayed on the window.

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

*Si usted está comprando un vehículo usado mediante este contrato según la descripción del vehículo arriba, la ley federal podrá exigir que la ventanilla demuestre una guía especial para el comprador.*

*LA INFORMACIÓN QUE USTED VE EN LA FORMA DE VENTANILLA PARA ESTE VEHÍCULO ES PARTE DE ESTE CONTRATO. LA INFORMACIÓN EN LA FORMA DE VENTANILLA DOMINA CUALESQUIER ESTIPULACIÓN CONTRARIA EN EL CONTRATO DE VENTA.*

### STATEMENT OF INSURANCE

NOTICE: No one is required as a condition of financing the purchase of a motor vehicle to purchase, or negotiate, any insurance through a particular insurance company, agent or broker. You have requested Seller to include in the balance due under this contract the following insurance. Insurance is to expire WITH ☐ BEFORE ☐ AFTER ☐ the due date of the final installment. Buyer requests Seller to procure insurance on the vehicle against fire, theft, and collision for the term of this contract. Any insurance will not be in force until accepted by the insurance carrier.

|  |  |  | Premium |
|---|---|---|---|
| N/A | COMP., FIRE & THEFT | Max. $ | N/A |
| N/A | DEDUCTIBLE COLLISION | Max. $ | N/A |
| BODILY INJURY | N/A LIMITS | Max. $ | N/A |
| PROPERTY D. $ N/A LIMITS | | Max. $ | N/A |
| MEDICAL | | Max. $ | N/A |
| | | Max. $ | N/A |
| TOTAL VEHICLE INSURANCE PREMIUMS $ | | | N/A (P) |

Name of Insurer _____

Above representations are hereby acknowledged.

10/5/1999  TOWN & COUNTRY    X _____
   SELLER                            BUYER

### CREDIT INSURANCE AUTHORIZATION AND APPLICATION

You voluntarily request the credit insurance checked below, if any, and understand such insurance is not required. You acknowledge disclosure of the cost of such insurance and authorize it to be included in the balance owed under this contract. Any returned or refunded credit

### ITEMIZATION OF AMOUNT FINANCED

|   |   |
|---|---|
| A. Cash Price Motor Vehicle and Accessories | $ 17772.00 (A) |
| 1. Cash Price Vehicle | $ 17772.00 |
| 2. Cash Price Accessories | $ N/A |
| B. Sales Tax | $ 533.16 (B) |
| C. Luxury Tax | $ N/A (C) |
| D. Service Contract (optional)** | $ 1500.00 (D) |
| **See Service Contract Box below | |
| E. Other | $ N/A (E) |
| To whom paid _____ | |
| F. Other DOC FEE | $ 299.50 (F) |
| To whom paid TOWN & COUNTRY TOYOTA INC | |
| G. Other | $ N/A (G) |
| To whom paid _____ | |
| TOTAL CASH PRICE (1A to G) | $ 20104.66 (1) |
| A. Trade-In (Description) | |
| Yr _____ Make _____ | |
| Model _____ | $ N/A (A) |
| V.I.N. _____ | |
| Odometer _____ | |
| 2. B. Less Prior Credit or Lease Payoff | $ N/A (B) |
| C. NET TRADE-IN (A minus B) | $ N/A (C) |
| D. Cash Downpayment | $ 3000.00 (D) |
| E. Manufacturer's Rebate | $ N/A (E) |
| TOTAL DOWNPAYMENT (2C + D + E) | 3000.00 |
| (If negative, enter "0" and see line 5C below) | $ (2) |
| 3. NET CASH PRICE (1 minus 2) | $ 17104.66 (3) |
| AMOUNTS PAID TO PUBLIC OFFICIALS | |
| A. License | $ 57.50 (A) |
| B. Registration | $ N/A (B) |
| C. Title | $ N/A (C) |



EXHIBIT
A
(4 pgs)

JAN.19.2001 2:14PM

...milar insurance company, agent or broker. You have a ...d Seller
...include in the balance due under this contract the followi... insurance.
...surance is to expire WITH ☐ BEFORE ☐ AFTER ☐ the due date of the
...al installment. Buyer requests Seller to procure insurance on the vehicle
...ainst fire, theft, and collision for the term of this contract. Any insurance will
...t be in force until accepted by the insurance carrier.

| | | | Premium |
|---|---|---|---|
| N/A DED., COMP., FIRE & THEFT | Mos. $ | | N/A |
| N/A DEDUCTIBLE COLLISION | Mos. $ | | N/A |
| ...DILY INJURY $ N/A LIMITS | Mos. $ | | N/A |
| ...OPERTY DAMAGE $ N/A LIMITS | Mos. $ | | N/A |
| ...DICAL | Mos. $ | | N/A |
| TOTAL VEHICLE INSURANCE PREMIUMS $ | | | N/A (9) |

...me of insurer _____

...foregoing declarations are hereby acknowledged.

05/1999  X _____  TOWN & COUNTRY  X _____
DATE    SELLER                         BUYER

**CREDIT INSURANCE AUTHORIZATION AND APPLICATION**
You voluntarily request the credit insurance checked below, if any, and understand that such insurance is not required. You acknowledge disclosure of the cost of such insurance and authorize it to be included in the balance payable under this contract. Any returned or refunded credit insurance premiums shall be applied to sums due under this contract. Only the persons whose names are signed below are insured.

CREDIT LIFE _____ N/A Mos. Premium $ N/A
JOINT LIFE _____ N/A Mos. Premium $ N/A
CREDIT ACCIDENT & HEALTH N/A Mos. Premium $ N/A
JOINT CREDIT ACCIDENT & HEALTH N/A Mos. Premium $ N/A
TOTAL CREDIT INSURANCE PREMIUMS $ N/A (b)

...me of insurer _____

☐ You want Credit Life Insurance  ☒ You do not want Credit Life Insurance
☐ You want Credit Accident and Health Insurance
☐ You want Joint Credit Life Insurance
☐ You want Joint Credit Accident and Health Insurance
☐ You do not want Credit Accident and Health Insurance

If the boxes above are checked to indicate that you desire Credit Life or Credit Accident and Health Insurance, or both, your signature below means that you agree that you elect the insurance shown above subject to the eligibility requirements, conditions and exclusions set forth in your insurance policy(ies) or certificate(s). If the boxes above are checked to indicate that you do not want Credit Life or Credit Accident and Health insurance, or both, your signature below acknowledges that fact.

5/1999  X _[signature]_  28
DATE   BUYER              AGE

       X _____
DATE   CO-BUYER           AGE

---

| | | |
|---|---|---|
| To whom paid TOWN & COUNTRY TOYO NC | | |
| G. Other | $ | N/A (G) |
| To whom paid _____ | | |
| TOTAL CASH PRICE (1A to G) | $ | 20104.66 (1) |
| A. Trade-In (Description) | | |
| Yr _____ Make _____ | | |
| Model _____ | $ | N/A (A) |
| V.I.N. _____ | | |
| Odometer _____ | | |
| 2. B. Less Prior Credit or Lease Payoff | $ | N/A (B) |
| C. NET TRADE-IN (A minus B) | $ | N/A (C) |
| D. Cash Downpayment | $ | 3000.00 (D) |
| E. Manufacturer's Rebate | $ | N/A (E) |
| TOTAL DOWNPAYMENT (2C + D + E) | | 3000.00 |
| (If negative, enter "0" and see line 5C below) | $ | 3000.00 (2) |
| 3. NET CASH PRICE (1 minus 2) | $ | 17104.66 (3) |
| AMOUNTS PAID TO PUBLIC OFFICIALS | | |
| A. License | $ | 57.50 (A) |
| B. Registration | $ | N/A (B) |
| C. Title | $ | N/A (C) |
| 4. D. Transfer | $ | N/A (D) |
| E. Temporary Tag | $ | N/A (E) |
| F. Lien | $ | N/A (F) |
| G. Inspection | $ | N/A (G) |
| H. Other | $ | N/A (H) |
| TOTAL OFFICIAL FEES (4A to H) | $ | 57.50 (4) |
| OTHER AMOUNTS FINANCED** | | |
| A. Total premiums paid to insurance companies per Statement of Insurance (a + b) | $ | N/A (A) |
| B. Other | $ | N/A (B) |
| To whom paid _____ | | |
| 5. C. Prior Credit or Lease Balance | $ | N/A (C) |
| To whom paid _____ | | |
| D. Other | $ | N/A (D) |
| To whom paid _____ | | |
| TOTAL OTHER AMOUNTS FINANCED (5A to D) | $ | N/A (5) |
| 6. AMOUNT FINANCED (3 + 4 - 5) | $ | 17162.16 (6) |
| 7. FEES NOT FINANCED | $ | N/A (7) |
| To whom paid _____ | | |
| **Seller may retain a portion of these amounts. | | |

VEHICLE USE: The primary use of the vehicle will be
☒ Personal, Family or Household  ☐ Commercial  ☐ Agricultural

*SERVICE CONTRACT (Optional) You request a service contract with the following company for the term below. The cost as shown in Item (1D) above.  36000 MILES/
Company  FIDELITY WARR/T&C TOYOTA    Term  36  Months
Buyer X _[signature]_

---

☐ You ..._urance Charge if the Amount Financed, Item 6, is paid in full on or
_____ Year _____ SELLERS INITIALS _____

## THERE IS NO COOLING OFF PERIOD

...te law does not provide for a "cooling off" or other cancellation period for this sale. Therefore, you cannot later cancel this contract
...mply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign
...now, you may only cancel this contract with our agreement or for legal cause, such as fraud.

...r and Co-b... acknowledge that (1) before signing this contract Buyer and Co-Buyer have read both sides of this contract and received a legible,
...mpletely filled-in copy of this contract; and (2) Buyer and Co-Buyer have received a copy of every other document that Buyer and Co-Buyer signed
...ing the con.. negotiation; and (3) they execute this contract under seal and adopt as their seal the "(Seal)" next to the signature of each.

...r Signature X _[signature]_ (Seal)   Seller  TOWN & COUNTRY TOYOTA INC
...yer's Signature X _____ (Seal)   Seller's Address  9101 SOUTH BLVD CHARLOTTE NC 28273  (Seal)
                                          By X _[signature]_

FORM NO. ...-TFC ...                    ORIGINAL

## ADDITIONAL TERMS AND AGREEMENTS

PROMISE TO PAY: You promise to pay the downpayment and Amount Financed, plus the Finance Charges on the Amount Financed as shown in the Payment Schedule, even if the vehicle is damaged, destroyed or missing.

SIMPLE INTEREST CONTRACT: This is a simple interest contract. The Finance Charge, Total of Payments and Payment Schedule shown may differ from the amount you will ultimately have to pay if your payments are not received on their exact due dates or the Seller adds amounts to the amount you owe for any of the reasons stated below. For example, early payments would reduce your final payment while late payments and additions to the amount you owe would increase it. Your final payment may be different from the amount shown for at our option, we may require you to make additional payments until all amounts you owe are paid in full. If the Seller figured the Payment Schedule assuming equal monthly payment periods and other factors permitted under the Truth in Lending Act. Your promise to pay requires you to pay the final payment on the date due even if it is different from the amount shown for any of these reasons.

SECURITY INTEREST: You hereby grant us a security interest under the Uniform Commercial Code in the vehicle, which security interest secures all sums which may become due under this contract, as well as any modifications, extensions, renewals, amendments, or re-financing of it.

USE OF VEHICLE: You agree to keep the vehicle free of all taxes and liens, except in favor of Seller, and not to use the vehicle—or permit the vehicle to be used—illegally, improperly, or for hire, or to expose the vehicle to misuse, seizure, or confiscation, or other involuntary transfer, even if the vehicle was not the subject of judicial or administrative action. You agree not to make any material change in the vehicle or allow any material change in it to be made, or to remove the vehicle, or allow it to be removed from your state of residence as shown in this contract for a period in excess of 30 days or transfer any interest in the vehicle. You agree to keep the vehicle in good working condition and make all necessary repairs. You agree not to remove the vehicle, or to permit its removal, from this country. Although we are not obligated to do so, if we elect to pay any liens, fees or taxes in connection with the vehicle, or to expend any other amount to protect our interests in the vehicle, you will reimburse us, at our option, (i) upon our demand upon you to do so or (ii) we may add the dollar amount of any such liens, fees, taxes or other charges we pay to the balance of this contract accruing Finance Charge, from the time we pay such amounts until the time you pay them to us, at 16% per annum. In the alternative, we may charge the Annual Percentage Rate shown on the face of this contract, if permitted by law. Such dollar amount and Finance Charge will be due at maturity of this contract or, at our option, in monthly installments due on the remaining payment dates shown on the face of this contract.

INSURANCE: You agree to keep the vehicle insured in our favor with a policy satisfactory to us and with an insurer authorized to do business in the jurisdiction in which the vehicle is registered, with comprehensive fire, theft and collision coverage, insuring the vehicle in an amount sufficient to cover the value of the vehicle. You agree to deliver the policies to us, and you agree that we may: (i) contact your insurance agent to verify coverage or to add us as a loss payee or lienholder, (ii) make any claim under your insurance policy, (iii) cancel any insurance financed under the contract on your default, and (iv) receive any payment of loss or returned premium, and apply the amounts received, at our option, to repair or replace the vehicle or to your indebtedness under this contract, including indebtedness not yet due. If you fail to maintain such insurance, we may, at our option, procure insurance to protect our interest in the vehicle, and you agree to pay for any insurance we procure and Finance Charges on the premiums at 16% per annum. In the alternative, we may charge the Annual Percentage Rate shown on the face of this contract, if permitted by law, according to the notice we send you. You agree that any insurance we purchase may be for the protection of only our interest in the vehicle, and may be for the remaining term of our contract or any shorter period as we determine. You understand that the insurance premiums may be higher if we must purchase insurance than if you had purchased the insurance yourself. If insurance has been purchased in connection with this contract, any difference between the amounts shown in the Statement of Insurance for premiums which may arise from errors in computation, classification, grouping or zoning, or changes in the type of insurance shall be payable by you on demand. Whether or not the vehicle is insured, you must pay for it if it is lost, damaged, or destroyed.

PREPAYMENT OF AMOUNT OWED: You may prepay all amounts due under this contract at any time. To do so, you must pay all accrued Finance Charges to the date of prepayment and any other charges you owe. Upon prepayment in full, if permitted by law, we may, at our option, impose a prepayment charge of 10% of your unpaid balance, not to exceed $25.

DEFAULT: If you breach any warranty or default in the performance of any promise you make in this contract or any other contract you have with us, including, but not limited to, failing to make any payments when due, or become insolvent, or file any proceeding under the U.S. Bankruptcy Code, or upon your demise, or if the vehicle is damaged, destroyed, used for illegal purposes or impounded, we may at our option and without notice or demand (1) declare all unpaid sums immediately due and payable subject to any right of reinstatement as required by law or the suit against you for all unpaid sums (3) take immediate possession of the vehicle (4) exercise any other legal or equitable remedy. Upon repossessing the vehicle and giving notice as provided by law, if you do not redeem the vehicle, we will sell it, together with any accessories, equipment or replacement parts installed therein, at public or private sale. We may purchase the vehicle at any public sale. The proceeds of the sale will be applied first to the expenses of retaking, reconditioning, storing and selling the vehicle, and the remainder will be applied to unpaid sums owing under this contract, including collection costs and reasonable attorneys' fees. If there is any money left over (surplus) it will be paid to you or to another person if required by applicable law. If a balance still remains owing, you promise to pay the same upon demand. If you default or breach this contract you agree to pay Finance Charges at the Annual Percentage Rate shown on the reverse side or, if a higher rate is permitted by law, at such higher rate, until all sums owing us are paid in full or until judgment is entered. After judgment, you will pay interest at the lesser of the legal rate or the Annual Percentage Rate, for the purchase of a vehicle for personal, family, household or agricultural purposes; otherwise, you will pay interest at the Annual Percentage Rate shown in this contract. Our remedies are cumulative and taking of any action shall not be a waiver or prohibit us from pursuing any other remedy. You agree that upon our default we shall be entitled to recover from you our reasonable collection costs, including, but not limited to, reasonable attorneys' fees. In addition, if we repossess the vehicle, you grant us and our agents permission to enter upon any premises where the vehicle is located. Any repossession will be performed peacefully. You agree we are entitled to recover from you our possible costs and expenses arising out of that repossession, including, but not limited to, any sums we pay third party agents. With respect to any sums we are entitled to recover pursuant to the previous four sentences, you will reimburse us, at our option: (i) upon our demand upon you to do so or (ii) we may add the dollar amount of any such sums, costs and expenses to the balance of this contract, accruing Finance Charge, from the time we pay such amounts until the time you pay them to us, at 16% per annum. In the alternative, we may charge the Annual Percentage Rate shown on the face of this contract, if permitted by law.

WARRANTIES OF BUYER: You promise that you have given true and correct information in your application for credit, you have no knowledge that will render that information untrue in the future, and you understand that we have relied upon the correctness of that information in entering into this contract; that upon request you will provide us with documents and other information necessary to verify any item of information contained in your credit application; that you have given us a true payoff amount on any vehicle traded in and that if it is not correct and smaller than the amount shown in this contract, you will pay the excess to us upon demand; and that any trade-in vehicle described on the reverse of this contract is free from all claims of us, except as previously disclosed to us.

POWER OF ATTORNEY: You hereby appoint us, as well as any of our appropriate officers or other employees, as your attorney-in-fact, with full power of substitution, to sign in your name, place and stead any and all Certificates of Ownership, Registration Cards, applications, affidavits and/or any other documents required or necessary to transfer or convey any and all right, title and interest in and to the vehicle, to any person or persons, and to do and perform any and all other acts necessary or incident to the execution of the powers you hereby grant us, including without limitation endorsing insurance proceeds checks on your behalf, as fully and to all intents and purposes as you might or could do if personally present. This grant of a power of attorney, being coupled with an interest, is irrevocable until all your obligations under this contract are fully satisfied or until judgment is entered.

OTHER AGREEMENTS OF BUYER: (1) In the event the estimated Department of Motor Vehicle fees are greater than the amount shown, you will pay the excess to us upon demand. If they are less, we will return the excess to you. (2) You agree that if we accept moneys in sums less than those due or make extensions of due dates of payments under this contract, doing so will not be a waiver of our later right to enforce the contract terms as written. (3) To the extent permitted by law, we may charge you a $25 fee for the return by a depository institution of a dishonored check, it payable order of withdrawal or share draft issued in connection with this contract. (4) If the vehicle is repossessed we may store personal property in the vehicle for your account and at your expense, as permitted by law, and if you do not claim the property within 10 days after repossession, we may dispose of the personal property in a manner we deem appropriate without liability to you. (5) If your payment is more than 10 days late you will be charged 5% or 5% of the installment past due, whichever is less. (6) You allow us to inspect the vehicle at any reasonable time and notify us of any change of your address immediately. (7) You acknowledge that we may assign this contract and you agree that assignee will have all our rights and remedies under this contract and you agree to pay all that is still owed under this contract at the times due, and in the amounts due, to the assignee. (8) payment of this contract in full we may endorse the Certificate of Title or a release of our security interest, as appropriate, and send it to any of you. (9) Any provision of this contract which may be held invalid shall not mean that this contract is unenforceable and the remaining provisions shall continue to be binding. (10) No transfer, renewal, extension, or assignment of interest in this contract will release you from your obligations under this contract. (11) This contract is to be governed by the law of the jurisdiction in which the seller of the vehicle is located, as set forth on the reverse of this contract and, if the vehicle is repossessed hereunder, the laws of the jurisdiction in which the repossession occurs may govern such repossession. All of the agreements between us and you are set forth in this contract and no modification of this contract shall be valid unless it is made in writing and signed by you and us. (13) may obtain a consumer credit report from one or more consumer credit reporting agencies (credit bureaus) in connection with your application and any update, renewal, refinancing, extension or existence of this contract and any affiliate of ours may obtain one or more consumer reports on you. You agree that we may also verify your employment, pay, assets and that anyone receiving a copy of this contract is authorized to provide us with such information. You and we, our assignees, any of our affiliates and others may exchange any account and financial information (including information in any credit reports) about you. You agree that this includes, but is not limited to, the sharing of information for the purposes of providing customer service, considering your eligibility for any product or service offered by us or others, and enforcing your obligations to us or an affiliate.

DELAY IN ENFORCEMENT: We can delay or waive enforcement of any of our rights under this contract without losing them.

SELLER'S WARRANTIES: You agree that you have verified the description of the vehicle to your satisfaction. UNLESS YOU HAVE BEEN GIVEN A WRITTEN WARRANTY BY THE SELLER OF VEHICLE, THERE ARE NO EXPRESS OR IMPLIED WARRANTIES WITH RESPECT TO THE MERCHANTABILITY, SUITABILITY, FITNESS FOR PURPOSE, OR OTHERWISE CONCERNING VEHICLE, PARTS OR ACCESSORIES DESCRIBED HEREIN.

NOTICES: Any notice sent to you will be sufficient if mailed to your last known address, which is presumed to be your address as set forth in this contract unless you have given us written notice of a change of your address.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Notice above does not apply if the box for Commercial or Agricultural use is checked on the reverse of this contract.

## ASSIGNMENT WITH RECOURSE

Case 3:04-cv-00492-RLV-CH   Document 1   Filed 09/22/04   Page 12 of 13

...any manner we deem appropriate without liability to you. (5) If y... ...ment is more than 10 days late you will be charged $6 or 5% of the installment ...se, whichever is less. (6) You will allow us to inspect the vehicle at any reasonable time and notify ... any change of your address immediately. (7) You acknowledge that we may assi... ...his contract and you agree that the assignee will have all our rights and remedies under this contract and you agree to pay all that is still owed under this contract at the times due, and in the amounts due, to the assignee. (8) Upon payment of this contract in full we may endorse the Certificate of Title or a release of our security interest, as appropriate, and send it to any of you. (9) Any provision of this contract which may be held invalid shall not mean that this contract is unenforceable and the remaining provisions shall continue to be binding. (10) No transfer, renewal, extension, or assignment of any interest in this contract will release you from your obligations under this contract. (11) This contract is to be governed by the law of the jurisdiction in which the seller of the vehicle is located, as set forth on the reverse of this contract and, if the vehicle is repossessed hereunder, the laws of the jurisdiction in which the repossession occurs may govern such repossession. (12) All of the agreements between us and you are set forth in this contract and no modification of this contract shall be valid unless it is made in writing and signed by you and us. (13) We may obtain a consumer credit report from one or more consumer credit reporting agencies (credit bureaus) in connection with your application and any update, renewal, refinancing, modification or extension of this contract and any affiliate of ours may obtain one or more consumer reports on you. You agree that we may also verify your employment, pay, assets and ...bills and that anyone receiving a copy of this contract is authorized to provide us with such information. You agree that we, our assignees, any of our affiliates and others may exchange credit, account and financial information (including information in any credit reports) about you. You agree that this includes, but is not limited to, the sharing of information for the purposes of providing customer service, evaluating your eligibility for any product or service offered by us or others, and enforcing your obligations to us or as affiliate.

DELAY IN ENFORCEMENT: We can delay or waive enforcement of any of our rights under this contract without losing them.

SELLER'S WARRANTIES: You agree that you have verified the description of the vehicle to your satisfaction. UNLESS YOU HAVE BEEN GIVEN A WRITTEN WARRANTY BY THE SELLER OF THE VEHICLE, THERE ARE NO EXPRESS OR IMPLIED WARRANTIES WITH RESPECT TO THE MERCHANTABILITY, SUITABILITY, FITNESS FOR PURPOSE, OR OTHERWISE CONCERNING THE VEHICLE, PARTS OR ACCESSORIES DESCRIBED HEREIN.

NOTICES: Any notice sent to you will be sufficient if mailed to your last known address, which is presumed to be your address as set forth in this contract unless you have given us written notice of a change of your address.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The notice above does not apply if the box for Commercial or Agricultural use is checked on the reverse of this contract.

## ASSIGNMENT WITH RECOURSE

For value received, the Seller ("Seller") named on the other side of this Simple Interest Motor Vehicle Contract and Security Agreement ("Contract") does hereby sell, assign and transfer to: _____ and its successors and assigns ("Assignee") all of Seller's right, title and interest in the Contract, the property described in the Contract ("Property"), and all moneys due and to become due under the Contract. Seller (jointly and severally if more than one) hereby further agrees as follows: Seller guaranties full performance of the Contract in all its terms and the prompt payment when due of any and all sums due under the Contract, together with collection expenses, costs and reasonable attorney's fees, and agrees to pay Assignee's reasonable attorneys' fees and costs incurred in enforcing this Assignment With Recourse. Seller has not assisted the buyer named in the Contract ("Buyer") in obtaining a loan from any third party, to be used as all or a part of any downpayment or any other payment on the Contract, except as expressly stated in the Contract. Seller represents and warrants that its requirements and agrees that the Laws applicable to the Contract, including, without limitation, the Federal Truth in Lending Act, the Federal Equal Credit Opportunity Act, state and federal laws regulating consumer credit and discrimination in the granting of consumer credit, and regulations promulgated under such laws, have been complied with. Seller agrees to jointly Assignee against and hold Assignee harmless from all claims, actions, suits, proceedings, costs, expenses, loss, damages and liabilities, including attorneys fees, arising out of, related to, connected with or resulting from any contention, whether well founded, baseless or otherwise, that there has been a violation of, or failure to comply with, any such laws in connection with the Contract. Seller agrees that in the event the Buyer breaches the Contract, whether or not the Property has been repossessed, or an attempt has been made to do so, suit may be brought by Assignee against Buyer, whether or not suit has been commenced against Buyer, and without waiving any rights as to time of repossession. Seller agrees that in the event of default by Buyer or repossession of the Property, Seller will pay Assignee upon demand the entire balance outstanding under the Contract. Seller waives all rights, defenses, demands and notices under this Assignment With Recourse and all other rights that can be waived in an assignment such as this. Seller agrees to indemnify Assignee from all claims, demands, loss and liability, including attorneys fees, in any way arising from the Property or the making or assignment of the Contract. Seller waives any and all notice of nonpayment, demand, presentment or protest which may be required under this Assignment With Recourse in connection herewith, and agrees that any extensions of renewals of remedies which may be granted by Assignee to Buyer shall not in any manner release Seller. In the event that suit is instituted to enforce any of the terms of this Assignment With Recourse, Seller waives the right to change the place of trial from the court originally acquiring jurisdiction. Seller warrants that application has been made for vehicle registration showing Assignee as first lienholder on the title to the Property.

Dated _____ at _____
                                                (Dealer's City and State)

_____ (Seal)   By _____
(Name of Dealer)              (Officer, Firm Member or Owner)

## ASSIGNMENT WITHOUT RECOURSE

For value received, the Seller ("Seller") named on the other side of this Simple Interest Motor Vehicle Contract and Security Agreement ("Contract") does hereby sell, assign and transfer to: **Americredit Fin___ ___** and its successors and assigns ("Assignee") WITHOUT RECOURSE as to the obligation of the Buyer and Co-Buyer for payment (except as may be provided by any provision checked below and in other agreements with the Assignee) all of Seller's right, title and interest in the Contract, the property described in the Contract ("Property"), and all moneys due and to become due under the Contract. Seller (jointly and severally if more than one) hereby further agrees as follows: Seller has not assisted the buyer named in the Contract ("Buyer") in obtaining a loan from any third party to be used as all or a part of any downpayment or any other payment on the Contract, except as expressly stated in the Contract. Seller represents and warrants that the Contract represents a bona fide sale and was actually executed in good faith by the Buyer and the Seller; that at the time of such execution the Buyer was of legal age and competent to execute the Contract; that the Property is truly and accurately described in the Contract, and has been delivered into the possession of Buyer; that the amount recited as having been received as a downpayment was actually paid in cash and not its equivalent; that merchandise taken in trade was received at not more than the reasonable market value thereof at the time of its receipt; that the terms of sale and statements set forth in the Contract are true and correctly set forth; that Seller has the full and complete title to the Property, subject only to the rights of the Buyer; that there are no recoupments, counterclaims, or setoffs on the rights of Buyer against the amounts payable; that there have been no representations or warranties made to Buyer not contained in the Contract; that all information given concerning Buyer is true and correct; that, to Seller's knowledge, there is no material misstatement in Buyer's credit application submitted to Assignee; and that Seller has no information or reason to suspect that any provision of the Contract will be violated and that Buyer is not a good moral and financial risk. The Contract, and the transaction it evidences, and all disclosures to Buyer and other matters in connection with the Contract are in all respects made as required by and in accordance with, all applicable federal and state laws and regulations governing the same. Seller agrees not to accept or take possession of payments on the Contract without Assignee's prior written consent. Seller warrants and represents that all requirements of the Federal Truth in Lending Act, the Federal Equal Credit Opportunity Act, state and federal laws regulating consumer credit and discrimination in the granting of consumer credit, and regulations promulgated under such laws, have been complied with and the Seller hereby agrees to indemnify Assignee and hold Assignee harmless from all claims, actions, suits, proceedings, costs, expenses, loss, damages, and liabilities, including attorneys fees, arising out of, connected with, relating to or resulting from any contention, whether well founded, baseless or otherwise, that there has been a violation or failure to comply with, any such laws in connection with the Contract. Should any of Seller's representations or warranties be false, Seller agrees to pay to Assignee or holder, upon demand, the full unpaid balance of the Contract, whether or not possession of the Property has been taken by Assignee or suit has been instituted against the Buyer, Seller, or both. Seller agrees that the taking of possession of the Property shall not be deemed an election of remedies, and Seller agrees to pay any deficiency thereafter remaining. If Assignee is required to bring an action against Seller as a result of the breach of any representation or warranty contained in this Assignment, Seller agrees to pay reasonable attorneys fees and court costs incurred by Assignee in such action. Seller consents to extensions of any of the terms of the Contract or impairment of remedies which may be granted by the Assignee, and waives any and all notice of nonpayment, demand, presentment or protest, which otherwise might be required under this Assignment or in connection therewith. Seller hereby waives all statutes of limitations and the defense thereof and all other rights that can be waived in an assignment such as this. In the event that suit is instituted to enforce any of the terms of this Assignment Without Recourse, Seller waives the right to change the place of trial from the court originally acquiring jurisdiction. Seller warrants that application has been made for vehicle registration showing Assignee as first lienholder on the title to the Property.

Any of the following that are checked also apply:

☐ Full Guaranty. Seller unconditionally guarantees the full and punctual payment of the full amount remaining unpaid under the Contract and agrees to repurchase the Contract from the Assignee or other holder, upon demand, for the full amount then unpaid whether the Contract shall then be in default or not.

☐ Full Repurchase. Seller guarantees payment of the full amount remaining unpaid under the Contract and covenants that if default be made in the payment of any installment due under the Contract, to pay the unpaid amount then to the Assignee or holder, upon redelivery of the vehicle to Seller.

☐ Limited Guarantee. Seller guarantees, in the event of a default under the Contract, the payment of the last $_____ of the total amount due under the Contract, and should the net proceeds of the sale of the vehicle be insufficient to pay in full the amount remaining unpaid under the Contract, Seller will, upon demand, pay to the Assignee or other holder the amount of its loss under the Contract.

☐ Partial Recourse. Seller guarantees the due and punctual payment of the first _____ Installments due under the Contract ("the Guaranteed Installments") and agrees to repurchase the Contract from the Assignee or other holder upon demand if default be made in the payment of any of the Guaranteed Installments for the full amount then unpaid, but should the Guaranteed Installments be paid punctually and in accordance with the terms of the Contract, the Seller's guaranty shall thereupon cease as to any installments due thereafter; the assignment shall have the same effect as if made without recourse.

Dated 10-5-99 at Cha_lotte NC
                                           (Dealer's City and State)

Town & Country Toyota (Seal)   By _____
(Name of Dealer)                  (Officer, Firm Member or Owner)